PRESENT:  Carrico, C.J., Compton, Lacy, Hassell, Koontz, and
          Kinser, JJ., and Whiting, Senior Justice

JACK M. PARRISH, III

                                        OPINION BY
v.  Record No. 980825         SENIOR JUSTICE HENRY H. WHITING

                                     February 26, 1999
WORLDWIDE TRAVEL SERVICE, INC.


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Melvin R. Hughes, Jr., Judge

     In this appeal, we decide whether the evidence of an

employee's refusal to follow his employer's directions

constitutes good cause for the employee's discharge as a

matter of law.

     In October 1995, Jack M. Parrish, III, sold a travel

agency  he operated as Dynasty Travel, Inc. (Dynasty) to

another travel agency, Worldwide Travel Service, Inc.

(Worldwide).  At that time, Parrish entered into a three-year

employment contract with Worldwide which specified that

Parrish could be discharged only for cause.  Approximately 13

months later, Worldwide sent Parrish a letter terminating his

employment "for unsatisfactory performance."

     Parrish filed this action against Worldwide for breach of

his employment contract.  After hearing the evidence in a

bench trial, the circuit court held that Worldwide had not

breached the contract because it had terminated his employment

"for cause," and entered a final judgment for Worldwide. Parrish appeals.

Among other things, Parrish contends that the evidence is insufficient to establish a cause for his termination. Worldwide responds that, as a matter of law, the evidence shows it had sufficient cause to terminate Parrish.[1]

As material here, the contract defined "cause" for termination of Parrish's employment as:

> any material breach by Employee of a material term of this Agreement, including, without limitation, material failure to perform a substantial portion of his duties and responsibilities hereunder in satisfactory and customary fashion as reasonably directed by Employer.

The contract also specified that Parrish was to have the "duties designated by the [Worldwide] Board of Directors." Before the sale, Parrish asked Sharon Nichols, Worldwide's president, what his duties were to be as an employee of Worldwide. Shortly thereafter, he received a copy of a written memorandum from Nichols containing the following:

> [Parrish's] role/goals-**Initially to assist with the transition and as consultant to [Nichols]; also to maintain existing accounts; build sales with new**

---

[1] Parrish also claims the trial judge failed to place the burden on Worldwide of establishing that it had good cause to terminate Parrish and that the trial judge implicitly required Parrish to establish Worldwide's lack of good cause for his termination. Because we conclude, as a matter of law, that the evidence establishes Worldwide's good cause to discharge Parrish, we do not consider these contentions.

2

**accounts focusing on groups; formulating an "outside sales" team and managing the team; maintaining a presence in the community; assisting with future acquisitions as needed.**

. . . .

Time frame of performance expectation? **Anticipate the first 30 days devoted to transition (i.e.: meetings with major clients, vendors, etc.); thereafter move toward goals of building business.**

Although Parrish testified that "[t]hese were my roles as I understood them," he knew before the sale that he and Nichols disagreed as to the length of the transition period required.  Nichols thought it would require 30 days and Parrish thought it would require from 12 to 18 months.

Four months after Parrish began his employment, Nichols asked him to turn his attention to business development and to prepare a marketing plan.  In a memorandum later that month, Nichols asked Parrish about his marketing plan and also directed him to prepare a weekly plan of action relating to "business development and client retention."  Parrish did not submit what he called a marketing plan until the day he was discharged, although Nichols kept asking for one.  Parrish did not submit weekly plans of action until the latter part of October 1996, a short time before he was discharged.

On a date not shown in the record, Parrish submitted an undated document captioned "Preliminary Marketing Discussion - January - June, 1996" in which he listed commercial accounts

3

he wanted "to call on, as we went forward into 1996." Even though Nichols and Susan Tobias Youngs, one of the principals in Worldwide, were urging that Parrish develop this new commercial business and Parrish knew that they thought Worldwide could handle this new business, he did not contact his listed prospects. He did not do so because, he said, "I realized that this transition was going very poorly, and it makes no sense to call on new business when you cannot handle it." He also testified that, "there [was] no question in my mind" that because of his time in the travel industry, he knew better than they did whether Worldwide could handle the new business.

Despite Parrish's expressed opinion, Nichols and Youngs still felt that Worldwide could handle any new commercial business which Parrish might secure if he called upon his suggested commercial contacts and others that Nichols had suggested. Yet Parrish did not try to solicit new commercial clients to see whether Worldwide could handle any such new business. Indeed, during the trial, Parrish did not claim that he tried to carry out these instructions of Nichols and Youngs. Instead, he introduced evidence tending to support his opinion that Worldwide could not handle the business. The issue thus presented is whether Parrish had the right to

4

refuse to follow his employer's instructions to solicit this new business until he thought Worldwide was able to handle it.

An employee's duty of loyalty to his employer includes the duty to follow the employer's reasonable instructions. Spotswood Arms Corp. v. Este, 147 Va. 1047, 1061, 133 S.E. 570, 574 (1926). And we think that this duty applies even though there may be differences of opinion as to the probability of success in carrying out those instructions.

Here, there were differing opinions of the ability of Worldwide to handle this new business. As the trial court pointed out,

> the other concerns [were] not [Parrish's] any more, but those of his employers. And I think while he had the best of intentions, ultimately, the call was with the employer with respect to what he was to do, and thereby he didn't live up to those expectations.

Parrish's role in soliciting this new business was a substantial portion of his duties and responsibilities. His refusal to exercise that function was a material breach of his employment contract. Hence, the evidence establishes as a matter of law that Worldwide had sufficient cause as defined in the contract to terminate Parrish's employment. Accordingly, we will affirm the judgment of the trial court.

Affirmed.